IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | CIVIL ACTION NO.:21-1402 |
| Plaintiff, | SECTION: |
| v. | |
| TERREBONNE PARISH CONSOLIDATED GOVERNMENT, and the HOUMA BOARD OF ADJUSTMENT | JUDGE |
| | MAGISTRATE |
| Defendants. | |

**COMPLAINT FOR EQUITABLE RELIEF, DECLARATORY JUDGMENT, AND REQUEST FOR EXPEDITED REVIEW**

Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), files this complaint for Equitable Relief, Declaratory Judgment, and Request for Expedited Review against Terrebonne Parish Consolidated Government (the "Parish") and the Houma Board of Adjustment (the "Board"), and states as follows:

I. **INTRODUCTION.**

1. This action arises out of the unlawful denial of Verizon Wireless's application to construct a wireless telecommunications facility on real property located in Terrebonne Parish, Louisiana.

2. Federal law and policy favor the rapid deployment of wireless communications infrastructure in order to facilitate providing wireless services to the public. Indeed, the Telecommunications Act of 1996 (the "TCA") expressly precludes and preempts certain state and local action inconsistent with those goals – including municipal zoning decisions that prevent carriers from deploying needed telecommunications facilities to provide those services. *See* 47 U.S.C. § 332. In this action, Verizon Wireless needs the proposed facility at issue to remedy

significant gaps in its wireless coverage and increase capacity in the surrounding area to meet skyrocketing customer demand for increased capacity and new and improved services.

3. The Board's denial of Verizon Wireless's proposed facility was not supported by substantial evidence and effectively prohibits the provision of personal wireless service in the vicinity of the proposed facility.

4. The Board's denial of Verizon Wireless's application, therefore, violates the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) (the "TCA"), and Verizon Wireless is entitled to an order directing the Board to grant Verizon Wireless's application for the proposed facility.

5. Verizon Wireless requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## II.     THE PARTIES.

6. Cellco Partnership is a general partnership with a principal address in Basking Ridge, New Jersey, and doing business as Verizon Wireless.

7. The Terrebonne Parish Consolidated Government is a consolidation of political subdivisions, Terrebonne Parish and the City of Houma, established under the laws of the State of Louisiana and is subject to the jurisdiction of this Court.

8. The Houma Board of Adjustment applied Terrebonne Parish's laws and regulations at issue in this proceeding while operating under the auspices of the Terrebonne Parish Consolidated Government's Planning and Zoning Department and is subject to the jurisdiction of this Court.

### III.   JURISDICTION AND VENUE.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), the TCA, 47 U.S.C. § 332(c)(7)(B)(v), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper in this Court pursuant to 47 U.S.C. § 332(c)(7)(B)(v) and 28 U.S.C. § 1391(b)(2) because the Board is located in this judicial district, the proposed wireless communications facility would be located in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

### IV.   LEGAL BACKGROUND.

11. The TCA governs federal, state and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

12. The purpose of the TCA is to "make available, so far as possible, to all the people of the United States . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communications service with adequate facilities at reasonable charges, for the purpose of the national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

13. Given the important public interests at play, the TCA prohibits and preempts barriers that state or local governments might impose to defeat or delay the installation of wireless communications facilities.

14. Specifically, the TCA prohibits state and local governing entities from discriminating among wireless providers and from taking actions that prohibit or effectively prohibit wireless providers from providing service. 47 U.S.C. § 332(c)(7)(B)(i).

15. The TCA states, in pertinent part, that state and local government regulation of personal wireless service facilities:

   (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

   (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(I-II).

16. The TCA requires that state and local governing bodies put a denial of a request for a wireless services facility in writing supported by substantial evidence in a written record.

17. The relevant language provides:

   (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities **shall be in writing and supported by substantial evidence contained in a written record**.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

18. The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [the TCA] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

19. Appeals under Section 332(c)(7)(B)(v) are to be heard and adjudicated on an expedited basis.

20. An injunction ordering issuance of all necessary approvals to allow construction of the proposed facility is an appropriate remedy for violation of the TCA.[1]

---

[1] *See Alltel Corp. v. City of Jackson, Mississippi,* 466 F. Supp. 3d 673, 684 (S.D. Miss. 2020).

## V.     FACTS.

**A.     Background.**

21.     Verizon Wireless provides commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law, in the State of Louisiana, including in and around Terrebonne Parish and the City of Houma.

22.     Verizon Wireless constructs towers and other wireless facilities to create and maintain a network of sites which consists of antennas and communications equipment designed to send and receive radio signals.

23.     Verizon Wireless uses radio frequency ("RF") engineers to determine where a new wireless facility is required. Verizon Wireless uses sophisticated proprietary techniques to conduct propagation studies to identify where sites need to be located.

24.     To provide reliable service, radio signal coverage from sites must overlap.

25.     Verizon Wireless is not able to provide reliable service to consumers if it is unable to construct sites to effect this overlapping coverage.

26.     Verizon Wireless determined that it has a significant gap in its ability to provide reliable service in an area of Terrebonne Parish and the City of Houma. Verizon identified this gap in coverage through customer input about wireless coverage in the area and RF analysis.

27.     Verizon Wireless further determined that there was a need to increase capacity to allow existing overloaded sites in the area to operate more reliably and efficiently.

28.     In order to improve the coverage and capacity of its wireless telecommunications network in and around Terrebonne Parish and the City of Houma, Verizon Wireless sought to develop a new wireless telecommunications facility to complement the existing wireless network.

29. Verizon Wireless's RF engineers identified a search area and Verizon Wireless sought to develop a wireless communications facility somewhere within that area to remedy its significant gap in coverage and capacity.

30. Verizon Wireless investigated properties within the area that potentially could be suitable for placement of the needed wireless communications facility.

31. An appropriate site for the facility would have to fill the gap in service, comply with the zoning requirements, be leasable, and be buildable. A property that does not meet each of those requirements is not a viable candidate.

32. Verizon Wireless first looked to find existing towers or other suitable structures upon which to place Verizon Wireless antennas. This is Verizon Wireless's preferred solution because, among other reasons, it is generally faster and less expensive.

33. After a thorough investigation of the surrounding area, Verizon Wireless determined there were no existing communications towers or structures close enough to the targeted area that could accommodate collocation of Verizon Wireless's antennas and remedy its significant gap in coverage and capacity.

34. Because there were no suitable existing towers in the area, Verizon Wireless was forced to identify potential sites for a new facility.

35. Verizon Wireless identified a site where the landowner was willing to lease space to Verizon Wireless for a wireless telecommunications facility located at 1276 St. Charles St., Houma, Louisiana 70360 (the "Proposed Site"). The Proposed Site is on property leased to Verizon Wireless by Blanchard & Robichaux, Inc. The Proposed Site is located in Zoning District C-3 (Neighborhood Commercial District) for zoning purposes.

36. The Proposed Site is located in a commercial area behind an existing gas station.

37.     Telecommunications towers are allowed in a Zoning District C-3 upon the approval of the height of the tower.

38.     Verizon Wireless proposes to develop a 100-foot monopole wireless telecommunications facility with associated equipment and associated 40' X 40' fence enclosure on the Proposed Site.  The height was determined by Verizon Wireless's RF engineers to be the minimum height needed to address the coverage and capacity issues in the area of the Proposed Site.

39.     The Proposed Site is critical for Verizon Wireless to develop a seamless wireless telecommunications network and to fill a significant gap in coverage and capacity in the area.

**B.      The Application.**

40.     Verizon Wireless filed an application on April 28, 2021 for approval to develop a new wireless telecommunication facility on the Proposed Site (the "Application").

41.     All required and necessary supporting documents were included with the Application in compliance with Section 28-178(h) of the Zoning Chapter of the Terrebonne Parish Code of Ordinances (the "Ordinance").  The information submitted with the Application demonstrated the need for the Proposed Site in order to provide wireless telecommunications services and fill the gap in coverage and capacity in the area around the Proposed Site.

42.     The Application complied with all of the applicable general and specific procedures, requirements, and standards required by the Ordinance.  The Application contained a statement demonstrating how it met all of the Ordinance's requirements with cross-references to the parts and components of the Application applicable to each section of the Ordinance.

43.     Verizon Wireless was never provided with notice that the Application was incomplete, deficient, or otherwise failed to meet the requirements of the Ordinance.

C. **Proceedings Before The Board.**

44. As noted in the Application, the only matter subject to the Board's approval was the height of the proposed tower.

45. The Board held a public hearing on the Application at its meeting on May 17, 2021 (the "Public Hearing") but elected to defer voting on the matter until its June 21, 2021 meeting.

46. At the public hearing, a Verizon Wireless representative, Chip Leyens of Baker Donelson, explained the Application and urged the Board to approve the height of the tower.

47. At the May 17 public hearing, Verizon Wireless:

   a. Provided evidence that the Proposed Site was the only site in the propagation area that could address the gap in coverage and capacity and meet the requirements of the Board's siting requirements;

   b. Demonstrated through substantial evidence that there were no existing towers or other suitable structures in the area on which Verizon Wireless could collocate;

   c. Presented substantial evidence showing how the Proposed Site would fit into the existing network of Verizon Wireless telecommunications facilities in the area;

   d. Presented evidence that it had evaluated other sites in the area and that the Proposed Site was the only site available that would meet zoning requirements, be leasable, and buildable that would provide the coverage needed to develop the network and close a significant gap in coverage and capacity;

   e. Presented evidence that, despite equipment on tower sites around the coverage area, a gap exists, the Proposed Site was needed to close the gap in the wireless telecommunications network, and the Proposed Site was needed to relieve capacity congestion on the existing telecommunications sites;

    f.  Offered evidence that the proposed tower would satisfy all FCC RF regulations and met all of the requirements of the Ordinance.

  48.  At the Public Hearing, five members of the public spoke in opposition to the tower and raised concerns regarding the health effects of the radio frequency emissions from the Facility. The opposition to the proposed tower was based on speculation or generalized unsupported concerns over the health effects of the radio frequency emissions from the proposed tower.

  49.  Mr. Leyens responded to the public comments on concerns regarding the health effects of the radio frequency emissions from the Facility and also explained that the TCA prohibits the Board from considering the environmental effects (including health effects) of radio frequency emissions as long as the facility complies with FCC regulations concerning such emissions (the proposed facility would comply with these regulations).

  50.  Following the public hearing, the Board elected to defer voting on the matter until its June 21, 2021 meeting.

  51.  At its June 21 meeting the Board voted to deny the application to approve the height of the tower on the grounds it would adversely affect the public health, safety, or welfare. No one spoke in opposition to the proposed tower at the June 21 meeting.

**D.**  **The Board's Written Denial.**

  52.  The Board issued a letter denying the Application on June 23, 2021. The written denial provided that the Board denied the request for the proposed facility "on the basis that the request does not meet review criteria identified in the standards and conditions as stated in Section 28-178(f)(3)(h) in the Zoning Chapter of the Terrebonne Parish Code of Ordinances, which states 'that the exception will not adversely affect the public health, safety, or welfare, or the Master

Plan.'"  The Board's letter did not specify why or how the proposed facility would adversely affect the "public health, safety, or welfare."

53. Defendants have failed to provide Verizon Wireless with substantial evidence supporting the denial of the Application in a written record in violation of the TCA.

54. Verizon Wireless has been and continues to be adversely affected by denial of the Application.

55. Verizon Wireless has exhausted all of its administrative remedies.

## COUNT ONE
## Failure to Comply with the
## Supported by Substantial Evidence Requirement

56. Verizon Wireless incorporates by reference the allegations set forth in Paragraphs 1-55 above as if set forth fully herein.

57. The TCA states in pertinent part:

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities **shall be in writing and supported by substantial evidence** contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

58. Verizon Wireless presented substantial evidence in support of the Application.

59. The Application complied with every aspect of the Ordinance.

60. The type of generalized concerns over health effects raised by members of the public during the public hearing are not sufficient and, as a matter of law, cannot constitute substantial evidence necessary to justify denial of the Application.

61. 47 U.S.C. § 332(c)(7)(B)(iv) provides that "[n]o State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions

to the extent that such facilities comply with the Commission's regulations concerning such emissions."

62. There was no evidence supporting denial of the Application and Defendants' denial of the Application was not supported by substantial evidence.

63. Defendants' denial of the application was based solely on comments at the public hearing related to alleged health effects the proposed facility might create.

64. Defendants' consideration of the health effects from RF emissions the proposed tower might emit is prohibited and preempted by 47 U.S.C. § 332(c)(7)(B)(iv).

65. Further, Defendants failed to provide a written decision supporting the denial with substantial evidence.

WHEREFORE, Verizon Wireless prays that this Court hold an expedited hearing, issue an injunction holding that Defendants violated the TCA, and order Defendants to approve the Application and issue all approvals necessary to allow construction of the proposed wireless telecommunications facility. Verizon Wireless further prays for such further, other or different relief as the Court deems appropriate under the circumstances.

## COUNT TWO
## Unlawful Prohibition of the
## Provision of Personal Wireless Services

66. Verizon Wireless incorporates by reference the allegations set forth in Paragraphs 1-55 above as if set forth fully herein.

67. The TCA specifically provides, in pertinent part, that state and local government regulation of personal wireless service facilities "**shall not prohibit or have the effect of prohibiting** the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II) (emphasis added).

11

68. Local government decisions effectively prohibit service is if there is a substantial gap in wireless coverage and capacity and the proposed site is the least intrusive means of filling that gap.

69. Verizon Wireless established that there was a substantial gap in coverage and capacity and that the proposed site was the least intrusive means to fill that gap.

70. Additionally, the Federal Communications Commission has recognized that an effective prohibition occurs where a local governing body materially inhibits a wireless service provider's ability to engage in any variety of activities related to its provision of wireless services, such as densifying a wireless network, improving capacity, or otherwise improving service capabilities.[2]

71. Verizon Wireless needs the proposed site to densify its network, provide much-needed capacity, and to otherwise improve its service capabilities.

72. Accordingly, the denial of the Application constituted a material inhibition of Verizon Wireless ability to provide service in the area around the proposed site and thus violated Section 332(c)(7)(B)(i)(II).

WHEREFORE, Verizon Wireless prays that this Court hold an expedited hearing, issue an injunction holding that Defendants violated the TCA, and enter an order granting the Application and all approvals necessary to allow construction of the proposed wireless telecommunications facility on the Proposed Site. Verizon Wireless further prays for such further, other or different relief as the Court deems appropriate under the circumstances.

---

[2] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, FCC 18-133 (Sept. 26, 2018), available at https://docs.fcc.gov/public/attachments/FCC-18-133A1.pdf (last visited June 9, 2021).

/s/ K.D.

JON F. LEYENS JR. (La bar no. #22699)
KENNARD B. DAVIS (La bar no. #38181)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana   70170
Telephone:     (504) 566-5200
Facsimile:      (504) 636-4000
jleyens@bakerdonelson.com
kbdavis@bakerdonelson.com


W. PATTON HAHN (*pro hac vice* to be filed)
Alabama State Bar No. 5894H36W
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
420 20th Street North
Shipt Tower, Suite 1400
Birmingham, Alabama 35203
Telephone:  205.328.0480
phahn@bakerdonelson.com

*Attorneys for Plaintiff Cellco Partnership d/b/a Verizon Wireless*